UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEONTREZ L. KITT,

       Petitioner,

v.                                                                    Case No. 3:22cv17819-MCR-HTC

RICKY DIXON,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Deontrez L. Kitt, *pro se*, filed a petition under 28 U.S.C. § 2254, challenging his conviction for first degree felony murder and armed burglary in the circuit court of Escambia County, Florida, 2013-CF-758.  Doc. 1.  After considering the petition and memorandum, the record, Doc. 15, the Secretary's response, Doc. 13, and Kitt's reply, Doc. 24, the undersigned recommends the petition be DENIED without an evidentiary hearing.

## I.      BACKGROUND

### A.     The Offense

The following factual summary is taken from the First District Court of Appeals' ("First DCA") opinion affirming the denial of Kitt's Amended Motion for Postconviction Relief ("Amended Rule 3.850 Motion").  *Kitt v. State*, 330 So.3d 597

(Fla. 1st DCA 2021). Kitt and several other men, Trevon Nelson, Deavis Saulsberry, and Anthony Wilson (who was tried with Kitt), hatched a scheme to rob the victim because Kitt believed the victim, Torrance Hackworth, would have money and drugs. All four men wore gloves and three of them were armed with firearms. After confronting the victim at the backdoor of his home, they forced him inside. Also inside the home were the victim's fiancé and her four children. A search of the house only turned up a handful of drugs. Frustrated, the men decided to hold the victim for ransom. They bound the victim with duct tape and put him in the trunk of his fiancée's white Buick.

Saulsberry and Wilson drove the Buick from the scene while Kitt and Nelson followed in Kitt's black Monte Carlo. Before they reached their next destination, the victim managed to get out of the trunk and run away. Saulsberry jumped out of the Buick, chased him, and shot him. Afterward, the four men went to Sanders Beach and abandoned the Buick. Then Saulsberry and Wilson joined Kitt and Nelson in the black Monte Carlo and returned to Kitt's house.

The victim's fiancée, Monica Watkins, testified consistently with this account. She described Kitt as the leader of the men who invaded her house. Also, although Watkins had never met any of the perpetrators before, she could identify Nelson, Kitt, and Wilson in separate police lineups. She also identified Kitt and Wilson in court. Her identification of Kitt was corroborated by DNA evidence.

Police found a glove near the area where the victim's body was discovered. Forensic testing revealed Kitt's DNA on the glove.

Additionally, cellphone records confirmed that the four codefendants were communicating with each other before the offenses and were at or near the scenes involved in the robbery, kidnapping, and murder. Eyewitnesses also testified that they saw the victim jump out of a white Buick and flee before another man got out of the same car and shot him.

Nelson, one of the perpetrators, also testified at the trial. *See* Doc. 15-4 at 735 (start of Nelson's testimony). Among other things, he told the jury the men came up with the plan to "rob a dude for some coke and money" at Kitt's house and it was Kitt who initially came up with the plan. *Id.* at 735-39. He testified the men went to the victim's house armed with guns; Kitt had a revolver. *Id.* at 740-42.

B.    **Procedural Background**

The jury convicted Kitt as charged on November 7, 2014. Doc. 15-2. He was sentenced to concurrent life sentences. His convictions and sentences were affirmed with a written opinion on direct appeal. *Kitt v. State*, 260 So. 3d 462 (Fla. 1st DCA 2018). Kitt successfully moved to file a belated petition for review in the Florida Supreme Court in SC19-1807. *See* Case No.: SC20-303. Doc. 15-15. The Florida Supreme Court denied the petition on August 5, 2020. *Kitt v. State*, No. SC20-303, 2020 WL 4524728 (Fla. Aug. 5, 2020). Before Kitt's judgment and conviction became final, Kitt filed a Motion for Postconviction Relief under Florida Rule of

Criminal Procedure 3.850 on September 14, 2020, Doc. 15-21 at 65. That motion was amended and remained pending until December 29, 2021, when the First DCA affirmed the decision and issued its mandate. *See Kitt v. State*, 330 So.3d 597 (Fla. 1st DCA 2021); Doc. 15-22 at 3. Kitt filed his federal petition on September 7, 2022.[1] Doc. 1 at 1.

## II.    LEGAL STANDARDS

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014).

---

[1] Under the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a § 2254 petition must be filed within one year of certain "trigger dates." 28 U.S.C. 2244(d)(1). Here, the applicable trigger date is November 3, 2020, ninety (90) days after the Florida Supreme Court declined review, because that is when the judgment and conviction became final. *See Nix v. Sec'y for Dept. of Corr.,* 393 F.3d 1235, 1236-37 (11th Cir. 2004). However, Kitt's AEDPA time was tolled until December 29, 2021, by the filing of the Rule 3.850 motion. *See* 28 U.S.C. § 2244(d)(2). Thus, the petition is timely filed.

"Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id.* A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of a petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). When it comes to factual determinations, "[s]tate court fact-findings are entitled to a presumption of correctness unless the petitioner rebuts that presumption by clear and

convincing evidence." *Conner v. GDCP Warden*, 784 F.3d 752, 761 (11th Cir. 2015); 28 U.S.C. § 2254(e)(1).

Several of Kitt's grounds seek relief for ineffective assistance of trial counsel ("IATC"). To succeed on an IATC claim, Kitt must show that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires Kitt to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Kitt must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations that Kitt was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.   DISCUSSION

### A.   Ground One: IATC for Failing to Strike Four Jurors for Cause or Peremptorily

In Kitt's first claim, he argues counsel was ineffective for failing to strike four jurors from the venire, claiming they did not give "unequivocal responses, or demonstrate an ability to be impartial, fair, and provide their full attention."[2]  Doc. 1 at 5.  Kitt exhausted this claim by raising it as Ground One in his Amended Rule 3.850 Motion, Doc. 15-18 at 9, and on appeal.

Both the circuit court and the First DCA denied relief for the same reason – Kitt confirmed for the trial court that he conferred with his attorney during the selection process and was satisfied with the jury selected.  Thus, as the First DCA concluded, "Kitt cannot now go behind these sworn representations to seek postconviction relief.  *Kitt*, 330 So.2d at 602 (citing *Kelley v. State*, 109 So. 3d 811, 813 (Fla. 1st DCA 2013)) ("[A] defendant who, like Appellant, personally affirms his acceptance of the jury panel will not be heard to complain in a postconviction motion that his counsel was ineffective for allowing a biased juror to serve on his jury.").

The First DCA's decision was neither an unreasonable application of the facts nor contrary to federal law.  To the contrary, a court's reliance on *Kelley* in denying

---

[2] Kitt, however, fails to identify the basis for his belief that these jurors were biased or on what basis they would have been struck for cause.

habeas relief has been consistently upheld. *See e.g., Price v. Sec'y Dep't of Corr.*, 558 F. App'x 871, 872-73 (11th Cir. 2014) (holding that it was not an unreasonable application of clearly established federal law for the Florida courts to conclude that defendant could not argue that counsel had been ineffective for failing to strike a juror that the defendant had approved); *see also, Butler v. Sec'y, Fla. Dep't of Corr.*, No. 3:17-CV-464-J-32PDB, 2020 WL 6044532, at *12 (M.D. Fla. Oct. 13, 2020) (finding that state court had not erred in following *Kelley* because it was "clear that the choice to add [the juror] to the jury was discussed directly with the Defendant and the Defendant and defense counsel found [the juror] to be a satisfactory choice for the jury."). Kitt is not entitled to habeas relief.[3]

### B.    Ground Two: IATC for Failing to Object to the Prosecutor's Violation of the Golden Rule and Not Moving for a Mistrial or Seeking a Curative Instruction

In Ground Two, Kitt argues counsel should have objected to three improper "golden rule" arguments during the State's opening statement and closing arguments and moved for a mistrial. Kitt exhausted this claim by raising it as Ground Two of his Amended Rule 3.850 Motion. Doc. 15-18 at 13. The First DCA applied *Strickland* and found that Kitt failed to establish either deficient performance or prejudice sufficient to entitle him to relief. *Kitt*, 330 So.3d at 602-03. This

---

[3] Kitt is also not entitled to relief on the merits of this claim because a "state's interpretation of its own laws or rules provide no basis for federal habeas relief." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1992).

conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

Two of the challenged remarks occurred during opening statements.  Doc. 15-4 at 208.  The prosecutor explained how the victim, his fiancée, and the four children were ushered into the living room while armed men demanded money and drugs at gunpoint.  After describing how the victim and his fiancée tried to convince the men they did not have any money or drugs, the prosecutor added, "You can imagine how the children were reacting."  *Id.* at 212.  The prosecutor then moved on to discussing how the four men searched the house.  Later, the prosecutor explained the chaos the victim's fiancée had to contend with before she could seek help, left alone with four frightened children and no car keys or cellphone.  The prosecutor stated, "As you can imagine [the victim's fiancée] and the children are terrified. They're trying to figure out what to do."  *Id.* at 214.

The third challenged remark occurred during closing arguments.    In explaining the delay between the 911 call reporting shots fired and the 911 call made by the victim's fiancée, the prosecutor highlighted how the fiancée waited to make sure that the men had left, then had to get the children dressed.  He stated:

> You can imagine what the children are like. [The victim] was father to all of these children. They just sat there in the living room and watched their father beaten, watched him bloodied, watched him be duct taped, watched him taken out the door by men with guns, and [the victim's fiancée has] got to herd all these kids in the condition that they're in

and get them up and somehow get them out the door and find a neighbor, and she does.

*Id.* at 1350.

The First DCA was not unreasonable in finding that none of these three remarks violated the so-called golden rule and that Kitt has not shown he was prejudiced by them. As the First DCA observed, "'[g]olden rule' arguments are arguments that invite the jurors to place themselves in the victim's position during the crime and imagine the victim's suffering." *Kitt*, 330 So.3d at 602 (citing *Braddy v. State*, 111 So. 3d 810, 842 (Fla. 2012) and *Mosley v. State*, 46 So. 3d 510, 520 (Fla. 2009)). Such arguments are improper "because they depend upon inflaming the passions of the jury and inducing fear and self-interest." *Id.* (citing *Bocher v. Glass*, 874 So. 2d 701, 703 (Fla. 1st DCA 2004)).

While golden rule arguments are prohibited, a prosecutor may argue "'[a] common-sense inference as to the victim's mental state'" so long as he or she does not cross the line into asking the jury to "imagine the victim's final pain, terror and defenselessness." *Victorino v. State*, 127 So. 3d 478, 493 (Fla. 2013) (quoting *Merck v. State*, 975 So. 2d 1054, 1064 (Fla. 2007)). A determination as to whether an argument is an improper golden rule argument is not limited to the words spoken. Instead, a reviewing court should consider the purpose of the argument, the evidence that supports it, the context in which it was made, and whether it is a fair response

to arguments advanced by the defense.  *Jackson v. State*, 250 So. 3d 844, 848–49 (Fla. 3d DCA 2018).

Here, none of the comments invited the jurors to place themselves in the position of the victim, the victim's fiancée, or the children.  The first statement came on the heels of the prosecutor explaining what happened after four men forced their way inside the victim's home and rounded up his family.  The mention of "imagining" the children's reactions, in this context, encouraged the jurors to picture the scene, not put themselves in the children's shoes.  Similarly, the second and third remarks about the reactions of the children and the fiancée after the men left were made in the context of explaining the delay between the offenses and the fiancée calling 911.  The prosecutor was conveying the difficulty of rounding up four frightened young children in their pajamas to get them dressed and over to a neighbor's house to seek help.

The First DCA reasonably concluded that the prosecutor made this point because, during the fiancée's cross-examination, the defense had asked questions suggesting that she ransacked the house herself and may have been involved in the offenses.  The prosecutor mentioned defense counsel's suspicion that the fiancée ransacked the house before making the third argument about the chaos the fiancée had to contend with before she could seek help.  Thus, because the purpose of the arguments was not to urge the jury to empathize with the children's fear, but to understand the fiancée's actions, these arguments were not improper.  Therefore,

counsel was not deficient for declining to object to these comments as any such objection would have been overruled. *Freeman v. Att'y Gen.,* 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim...." (citation omitted)).

Also, even if these arguments could be considered improper, Kitt cannot show prejudice. "[A] prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012). "To establish prosecutorial misconduct, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *Id.*

Kitt has not met that standard here. As the First DCA noted, the first and second comments were brief and limited. While the third was more detailed, as discussed above, the evidence against Kitt was strong. Not only did one of his codefendants implicate him, but the victim's fiancée identified him, and his DNA linked him to the offenses. His involvement was also confirmed by information gleaned from cellphone records. As a result, there is not a reasonable probability that the outcome would have been different if the comments had not occurred.

**C.     Ground Three: IATC for Failing to Seek Instruction on Second-Degree Murder as a Lesser-included Offense**

In Ground Three, Kitt argues that during the charge conference, the prosecutor and state court did not object to the giving of a lesser-included offense instruction for second-degree murder, and counsel was ineffective for failing to ask for it. Doc. 1 at 7. Respondent argues this claim is unexhausted and procedurally defaulted. Doc. 13 at 41. The undersigned agrees.

In the federal petition, Kitt claims he exhausted this claim by raising it in his Amended Rule 3.850 Motion. *Id.* at 8. However, a review of Kitt's Amended Rule 3.850 motion reveals that he did not raise any claim close to this one.[4] It contains no argument relating to a lesser-included second-degree murder instruction.

Before a § 2254 petitioner may obtain federal habeas corpus relief, he must exhaust all available state court remedies for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Walker*, 533 U.S. 167, 178–79 (2001). To fully exhaust a claim, Kitt "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion requirement

---

[4] In his reply, Kitt states "The Court only needs to review *'Exhibit* Q' attached to the § 2254 petition to see the Respondent is incorrect." Doc. 24 at 3. First, there is no Exhibit Q to the petition (Doc. 1) or the memorandum (Doc. 1-1). Exhibit Q provided by the Respondent is the Amended Rule 3.850 Motion and contains no such claim. Doc. 15-18.

applies to state post-conviction proceedings as well as to direct appeals. *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003). By failing to raise the claim in Ground Three in state court in any way, Kitt has failed to exhaust it.

Moreover, he cannot now return to state court to exhaust it, so it is procedurally barred. A habeas claim "is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008); *see also Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] ... there is a procedural default for purposes of federal habeas[.]"). Here, Kitt cannot return to state court to exhaust the claim because his postconviction motion would be deemed successive and untimely. *Devers-Division v. Sec'y, Dep't of Corr.*, 2021 WL 2581609, at *9 (M.D. Fla. June 23, 2021) ("As Devers-Division cannot return to state court to present the claim in an untimely, successive postconviction motion, . . . it is procedurally defaulted.") (citing Fla. R. Crim. P. 3.850(b) & (h)).

Although a procedural default may be excused upon a showing of "cause and prejudice" or a fundamental miscarriage of justice, Kitt does not argue either in the petition or the reply. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Therefore, he is not entitled to habeas review of Ground Three.

**D.    Ground Four: IATC for Failing to Seek a Severance of His Trial from Co-Defendant Wilson When an Independent Act Defense Was Available to Kitt**

In Ground Four, Kitt argues his attorney was ineffective for failing to seek severance of his trial from that of codefendant Wilson.  Specifically, he claims that because he was tried with Wilson, he was unable to get a jury instruction on the shooting being an independent act.[5]  Unlike Wilson, who was (according to Kitt) either the shooter or, at a minimum, in the car with the shooter, Kitt was in the car with Nelson, traveling behind Wilson.  Kitt also contends the lack of a severance deprived him of a fair trial because Wilson's incriminating interview was played at trial, which prejudiced Kitt.

Kitt exhausted this claim by raising it as Ground Three in his Amended Rule 3.850 Motion, Doc. 15-8 at 16, and on appeal.  The First DCA applied *Strickland* and denied relief because (1) Kitt was not entitled to an independent act jury instruction and (2) Wilson did not try to incriminate him.  The First DCA's decision

---

[5] Under Florida law, "[t]he 'independent act' doctrine arises when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, 'which fall outside of, and are foreign to, the common design of the original collaboration.'" *Ray v. State*, 755 So.2d 604, 609 (Fla. 2000) (quoting *Ward v. State*, 568 So.2d 452, 453 (Fla. 3d DCA 1990)).  "An independent act instruction is appropriate only when the actions of the cofelon who allegedly acted outside the scope of the original plan **were not foreseeable based on the actions a defendant set in motion**." *Rodriguez v. State*, 147 So.3d 1066, 1068 (Fla. 3d DCA 2014) (emphasis in original).  Thus, "where ... the defendant was a willing participant in the underlying felony and the murder resulted from forces which they set in motion, no independent act instruction is appropriate." *Ray*, 755 So.2d at 609.

was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

First, the First DCA rejected the claim that the "independent act" instruction was denied because the trials were not severed.  Rather, the instruction was denied "because the victim's death was a foreseeable consequence of the events he set in motion when he participated in the armed robbery and kidnapping."  *Kitt*, 330 So.3d at 604.  Therefore, counsel's decision not to ask for a severance did not result in Kitt losing out on an independent act instruction.

Second, the record simply does not support Kitt's position that Wilson's strategy was to try to shift the blame on Kitt as the shooter.  Wilson did not testify at trial and in his recorded statement, which was played for the jury, Wilson claimed to have been elsewhere at the time of the offenses.  He told the police he knew nothing about what had happened.  Wilson was pressed on whether his cellphone records would show he was talking to Kitt and Nelson, whom the police believed to be involved in the offenses.  Wilson responded that talking to someone on the phone did not mean he was also involved.  This statement did not incriminate Kitt.  Moreover, Nelson testified Saulsberry was the shooter – not Kitt or Wilson.

Thus, while Kitt correctly noted that Wilson's attorney impeached Nelson regarding which car he said Kitt was in, the circuit court pointed out this was part of a larger effort to establish the numerous conflicting statements Nelson had given; it did not have the effect of pointing the finger at Kitt.  The circuit court pointed out

that if the cases were tried separately, Kitt's counsel would likely have asked the same questions asked by Wilson's attorney.

Finally, even if counsel had asked for a severance, such a motion was not likely to be granted. Florida Rule of Criminal Procedure 3.152(b)(1) directs the trial court to order severance whenever necessary "to promote a fair determination of the guilt or innocence of one or more defendants." "This fair determination may be achieved when all the relevant evidence regarding the criminal offense is presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct, and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence." *McCray v. State*, 416 So. 2d 804, 806 (Fla. 1982). Kitt has pointed to nothing in the joint trial that prevented the fair determination of his guilt or innocence. Kitt is not entitled to relief.

## E.    Ground Five: IATC for Failure to Elicit Testimony from Trevon Nelson in Support of the Independent Act Instruction

In Ground Five, Kitt argues his attorney was ineffective for failing to elicit testimony from Nelson that neither he nor Kitt had planned to kidnap or shoot the victim, which would have supported the request for the independent act instruction. Doc. 1 at 10. Kitt exhausted this claim by raising it as Ground Four in his Amended Rule 3.850 Motion and on appeal. Doc. 15-18 at 20. The First DCA applied *Strickland* and denied relief, finding Kitt had not shown a deficiency on the part of

counsel or any resulting prejudice. *Kitt*, 330 So.3d at 604.  This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

The testimony sought from Nelson would not have made it any more likely that Kitt would have been entitled to an independent act instruction.  As stated above, the evidence showed that Kitt was a willing participant in the underlying felony and the murder foreseeably resulted from forces which he personally set in motion.  Doc. 15-19 at 13.  As the First DCA explained, Nelson testified Kitt came up with the idea to rob the victim of money and drugs.  Also, both Nelson and the victim's fiancée testified to Kitt's active involvement in the robbery and kidnapping of the victim.  Kitt's involvement in the robbery and kidnapping negated his request for the independent act instruction, regardless of whether the original plan specifically included kidnapping or shooting the victim.  Thus, Kitt has not shown a deficiency on the part of counsel or any resulting prejudice.

### F.    Ground Six: IATC for Failure to Call Stacey Gulley, Mike Gadson and Shonda McDonald as Witnesses

In Ground Six, Kitt argues his attorney was ineffective for failing to call Gulley, Gadson, and McDonald as witnesses because they all had discussions with the fiancée just after the murder and these conversations could have been used to impeach the fiancée.  Doc. 1 at 12.  Respondent argues Kitt's claims as to the failure to call Gadson and McDonald are not exhausted and, thus, procedurally defaulted.

The undersigned agrees. Kitt only took issue with counsel's failure to call Gulley in Ground Five of his Amended Rule 3.850 Motion.[6]  Doc. 15-18 at 23.

As for counsel's failure to call Gulley, the circuit court and First DCA applied *Strickland* and found Kitt cannot show that counsel performed deficiently or that he suffered any resulting prejudice. This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

Kitt argues Gulley could have testified that the victim's fiancée told her she could not identify the intruders. He alleges that Gulley could have also described a text message exchange with the victim's fiancée in which Gulley sent her a picture of Kitt and the fiancée responded that he was not involved in the offenses. Kitt claims this testimony would have impeached the fiancée's in-court and out-of-court identifications.

The circuit court considered Kitt's argument and found it misstated the communications between the fiancée and Gulley. The circuit court took judicial notice of Gulley's testimony from the postconviction evidentiary hearing in Wilson's case. Doc. 15-19 at 14. During that hearing, Gulley acknowledged she did not speak to the victim's fiancée about the offenses until after the fiancée had spoken to the police. By that time, the fiancée had provided police with detailed

---

[6] Once again, Kitt refers to Exhibit Q, which as stated above, is the Amended Rule 3.850 motion, and is attached to Respondent's response as Doc. 15-18.

descriptions of her assailants and identified them in the photo lineups. *Kitt*, 330 So.3d at 604-05. The alleged text message exchange occurred after the fiancée provided descriptions and identifications to the police. Later, Gulley, who described herself as someone who "play[s] detective," took it upon herself to pepper the fiancée with questions about her assailants' descriptions. The fiancée insisted she knew nothing and told her to stop asking about it. Gulley's testimony suggested that the fiancée replied in that manner simply because she was annoyed by Gulley's questioning. The circuit also explained a potential bias on the part of Gulley, who explained that while she has six biological sons, she has many young men that she calls her "boys" because she thinks of them as her children. She testified that Kitt was one of her "boys" and she "tried to pin down [the fiancée] on whether or not he could be implicated." Doc. 15-19 at 14.

Given this information, Kitt cannot show that counsel performed deficiently or that he suffered any resulting prejudice. The sole value of Gulley's testimony was to impeach the identifications made by the victim's fiancée. That value was diminished by Gulley's bias in Kitt's favor and the fact that the fiancée may have been dismissing Gulley's questions out of irritation. In any event, by the time Gulley began badgering the victim's fiancée with questions about the offenses, the victim's fiancée had already described the assailants to the police and identified three of them in a photo lineup. She testified to those descriptions at trial and her identifications were consistent with the DNA evidence and Nelson's testimony, as well as the

cellphone records. The First DCA's conclusion correctly determined there is no reasonable probability that Gulley's testimony would have changed the outcome of Kitt's trial. Therefore, Kitt is not entitled to habeas relief on Ground Six.

### G.    Ground Seven: IATC Due to the Cumulative Effect of the Alleged Errors of Counsel

In Ground Seven, Kitt argues he is entitled to relief because of the cumulative effect of his counsel's errors. Kitt exhausted this claim by raising it as Ground 6 in his Amended Rule 3.850 Motion. Doc. 15-18 at 26. The circuit court and First DCA applied Florida law stating that because none of the asserted claims had merit, there was no cumulative effect to consider. Doc. 15-19 at 15 (citing *Foster v. State*, 132 So.3d 40, 74 (Fla. 2013)) and *Kitt*, 330 So.3d at 605 (citing *Barnhill v. State*, 971 So. 2d 106, 118 (Fla. 2007)). This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d); *see e.g., Allen v. Sec'y, Dep't of Corr.*, 767 F. App'x 786, 789 (11th Cir. 2019) ("because Allen had not shown error of constitutional dimensions on any of his individual ineffective assistance of counsel claims, he could not show that he was entitled to habeas relief based on the cumulative effect of the alleged errors").

### H.    Ground Eight: Nelson's Recantation Constitutes Newly Discovered Evidence Warranting Reversal and a New Trial

In Ground Eight, Kitt contends that he should have been granted a new trial after Nelson recanted his trial testimony. Based on the record, the circuit court took

judicial notice of transcripts from Wilson's postconviction evidentiary hearing. During that hearing, Nelson recanted his testimony about Wilson's participation in the crime. Nelson, however, acknowledged his own participation and did not recant his testimony about Kitt or Saulsberry's involvement.

Kitt exhausted this Ground by raising it as Ground Seven of his Amended Rule 3.580 Motion. Doc. 15-18 at 27. The circuit court applied Florida law concerning newly discovered evidence and found that "the record reflects that Nelson's recantation does not undermine confidence in Defendant's conviction in any way." Doc. 15-19 at 16. The First DCA also applied Florida law and found "given the testimony of the victim's fiancée, her identification of Kitt, and the DNA evidence of his participation, Nelson's recantation would not result in acquittal on retrial." *Kitt*, 330 So.3d at 606. Kitt is not entitled to relief on this claim.

First, Kitt's claim provides no basis for federal habeas relief as it presents an issue purely of state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Here, Kitt does not refer to or cite any federal right, constitutional provision or federal law in relation to this claim. He simply argues his conviction should be overturned based on newly discovered evidence of a witness recanting his trial testimony. The Eleventh Circuit has previously held that such a claim is not

cognizable in habeas as a pure state law claim. *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1159 (11th Cir. 2022) (finding that newly discovered evidence claim based on post-trial recantation of witness "was nothing more than a state law motion for a new trial based on newly discovered evidence" because "Green never cited any federal constitutional law when litigating Claim IV in the state courts; instead, both Collateral Counsel and the state courts treated Claim IV as a state law-based claim and cited Florida state court cases.").

Moreover, even if the claim were cognizable on federal review, the decision of the state courts was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). The state court found that Nelson's testimony would not have exonerated Kitt. The state court pointed out that at Wilson's postconviction evidentiary hearing,[7] Nelson testified only that his trial testimony concerning Wilson's involvement was false. Doc. 15-19 at 295-96. He did not exonerate Kitt. In fact, Nelson testified that Kitt and Saulsberry approached him about participating in this robbery by calling him when he was at Wilson's house. *Id.* at 345. Also, when specifically asked if Kitt was involved, Nelson refused to exonerate him, attempting to plead the Fifth. *Id.* at 364. Even after the court explained to Nelson he had no Fifth Amendment right to assert and threatened him with contempt of

---

[7] His testimony at the evidentiary hearing in Wilson's case begins at Doc. 15-19 at 287.

court, Nelson persisted in refusing to exonerate Kitt. *Id.* at 365-67. The circuit court thus determined that Nelson's testimony at Wilson's evidentiary hearing was completely devoid of any exonerating testimony concerning Kitt's involvement in the crimes at issue.

The First DCA agreed, finding that Nelson's testimony at the evidentiary hearing did not exonerate Kitt. *Kitt*, 330 So.3d at 605-06. The undersigned finds nothing in Kitt's arguments to contradict these findings by the state courts. Accordingly, he is not entitled to habeas relief on Ground Eight.

## IV.    CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 574.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this Report and Recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.      That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Kitt*, 2013 CF 758, in the First Judicial District, in and for Escambia County, Florida, Doc. 1, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 29th day of January, 2024.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.